IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America                    : Criminal No. 03-516-01

                                            (Civil No. 1:10-cv-59)


                        v.                  :


James Odell Baxter, II,

                                            :

            Petitioner/Movant

**APPLICATION FOR CERTIFICATE OF APPEALABILITY**

Petitioner, by and through his attorney, submits the following Application for Certificate

of Appealability as to each issue raised in his Motion to Vacate, Set Aside or Correct Sentence

Pursuant to 28 U.S.C. 2255 and the Supplemental Motion to Vacate, Set Aside or Correct

Sentence.

## I. STANDARDS FOR GRANTING A CERTIFICATE OF APPEALABILITY

28 U.S.C. 2253(c)(1) reads, in pertinent part, as follows:

> Unless a circuit justice or judge issues a certificate of
> appealability, an appeal may not be taken to the court of
> appeals from--(A) the final order in a habeas corpus proceeding
> in which the detention complained of arises out of process
> issued by a State court; or (B) the final order in a proceeding under
> section 2255.

28 U.S.C. 2253(c)(2) reads, in pertinent part, as follows:

> A certificate of appealability may issue under paragraph
> (1) only if the applicant has made a substantial showing of
> the denial of a constitutional right.

***Miller-El v. Cockrell***, 537 U.S. 322, 330-331, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)

reads, in pertinent part, as follows:

A COA will issue only if the requirements of Section 2253 have been satisfied. "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Slack*, 529 U.S. at 482; ***Hohn v. United States***, 524 U.S. 236, 248, 141 L.Ed.2d 242, 118 S.Ct. 1969 (1998). As the Court of Appeals observed in this case, Section 2253(c) permits the issuance of a COA only where a petitioner has made a "substantial showing of the denial of a constitutional right." In *Slack, supra* at 483, we recognized that Congress codified our standard, announced in ***Barefoot v. Estelle***, 463 U.S. 880, 77 L.Ed.2d. 1090, 103 S.Ct. 3383 (1983), for determining what constitutes the requisite showing. Under the controlling standard, a petitioner must "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" 529 U.S. at 484  (quoting ***Barefoot***, supra at page 893 note 4).

The COA determination under Section 2253 requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.

To that end, our opinion in *Slack* held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in *Slack* would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with Section 2253 that a COA will issue in some  instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'" ***Barefoot***.    supra at page 893, note 4

At issue here are the standards AEDPA imposes before a court of appeals may issue a COA to review a denial of habeas relief in the district court. Congress mandates that a prisoner seeking postconviction relief under 28 U.S.C  2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, petitioner must first seek and obtain a COA. In resolving this case we decide again that when a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition, the court of appeals should limit its examination to a threshold inquiry into the underlying merit of his claims. ***Slack v. McDaniel***, 529 U.S. 473, 481, 146 L.Ed.2d 542, 120 S.Ct. 1595 (2000). Consistent with our prior precedent and the text of the habeas corpus statute, we

reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Slack, supra*, 529 U.S. at 484, 146 L.Ed.2d 542, 120 S.Ct. 1595. Applying these principles to petitioner's application, we conclude a COA should have issued.

"Substantial showing of the denial of a constitutional right" means that the applicant must present a "question of some substance" in order to be entitled to a COA. *Barefoot*, 463 U.S. 880, at 893.

This Court has stated that a COA should be issued if jurists of reason would find the issue "debatable." *United States v. Saro,* 252 F3d 449,453 (D.C.Cir. 2001)

To qualify for a COA: 'The petitioner need not show that he should prevail on the merits…Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.' [*United States v.*]*Mitchell,* 216 F3d [1126] at 1130 [D. C. Cir. 2000](alterations and emphasis in original) (quoting *Barefoot v., Estelle,* 463 U.S. 880, 893, N. 4, 77 L.Ed463 U.S. 880, 893, N. 4, 77 L.Ed2d 1090, 103. S.Ct. 3383 (1983). *Saro,* 252 F3d at 455-456.

Where, as here, the petitioner alleges that the district court was required to hold an evidentiary hearing or otherwise expand the record before making a determination, the petitioner must show that the procedural errors are debatable and the 2255 motion presentence constitutional issues that have some substance.

That said, the majority of appellate courts have stated that the Appellant/Applicant does not have to prove that he is entitled to habeas in order to be entitled to a COA. *Pabon v. Superintendent*, *SCI Mahanoy*, 654 F3d 385 (3d Cir. 2011). The purpose of the COA is to determine whether the issues are debatable, not to resolve the debate. See also: *Love v. McCray*, 413 F3d 192, 195 (2d Cir. 2005). The question does not involve resolution of the debate.

**ISSUES THAT ARE DEBATABLE AMONG JURISTS OF REASON**

**I. PROCEDURAL ERRORS**

**A. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT REJECTED PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING ON THE CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL PRESENTED IN THE 2255 MOTION**

In *Machibroda v. United States,* 368 U.S. 487, 494-495, 82 S.Ct. 510 (1967) the United States Supreme Court said that the court entertaining a 2255 motion that raised issues that could not be conclusively determined by the motion itself or by the "files and records" was required by statute to hold an evidentiary hearing.

As reasonable jurists could differ; a court could resolve the issue in a different manner and the question is adequate and deserves to proceed further, Mr. Baxter is entitled to the issuance of a Certificate of Appealability on his claims of procedural error.

**B. THE DISTRICT COURT ERRED WHEN IT FAILED TO CONSIDER THE FACTS SET FORTH IN THE 2255 MOTION AND ATTACHED AFFIRMATIONS AND AFFIDAVITS AS TRUE AND CORRECT AND FAILED TO GIVE THE 2255 MOTION AND ATTACHMENTS THE BENEFIT OF ALL REASONABLE INFERENCES**

28 U.S.C. 2255 reads, in pertinent part, as follows:

> Unless the motion, and the files, and the records of the case
> conclusively show that the prisoner is entitled to no relief, the
> court shall cause notice thereof to be served upon the United States
> attorney, grant a prompt hearing thereon, determine the issues, and
> make findings of fact and conclusions of law with respect thereto.
> If the court finds that the judgment was rendered without jurisdiction, or
> that the sentence imposed was not authorized by law or otherwise
> open to collateral attack, or that there has been such a denial or infringement of
> the constitutional rights of the prisoner as to render
> the judgment vulnerable to collateral attack, the court shall vacate and
> set the judgment aside and shall discharge the prisoner or resentence him
> or grant a new trial or correct the sentence as may appear appropriate.

***Massaro vs. United States***, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) reads,

in pertinent part, as follows:

> The background of our discussion is the general rule that
> claims not raised on direct appeal may not be raised on
> collateral review unless the petitioner shows cause and prejudice.
> See <u>United States vs. Frady</u>, 456 U.S. 152, 167, 71 L.Ed.2d 816,
> 102 S.Ct. 1584 (1982); <u>Bousley vs. United States</u>, 523 U.S. 614, 621,
> 140 L.Ed.2d 828, 118 S.Ct. 1604 (1998). The procedural default rule
> is neither a statutory nor a constitutional requirement, but it is a
> doctrine adhered to by the courts to conserve judicial resources and to respect the
> law's important interest in the finality of judgments.
> We conclude that requiring a criminal defendant to bring ineffective
> assistance of counsel claims on direct appeal does not promote
> these objectives...*We hold that an ineffective assistance of counsel claim*
> *may be brought in a collateral proceeding under Section 2255 whether or not the*
> *petitioner could have raised the claim on direct appeal...*
>
>
>
> Under the rule we adopt today, ineffective assistance claims
> ordinarily will be litigated in the first instance in the district
> court, the forum best suited to developing the facts necessary to
> determining the adequacy of representation during an entire trial.
> The court may take testimony for the defendant and prosecution and from the
> counsel alleged to have rendered...(In a 2255 proceeding, the defendant "has a full
> opportunity to prove facts establishing ineffective assistance of counsel, the
> government has the full opportunity to present evidence to the contrary, the
> district court hears spoken words we can only see in print and sees expressions we
> will never see, and a factual record bearing precisely on this issue is created.")

***Armienti vs. United States***, 234 F3d 820, 823 (2d Cir. 2000) states:

> To prevail on his motion for a hearing, [Armienti] must establish
> that he has a "plausible" claim of ineffective assistance of counsel.
> At this preliminary stage, he is not required to establish that he
> will necessarily succeed on the claim, and indeed, if he could
> presently prove that proposition, no hearing would be necessary.

*Blackledge vs. Allison*, 431 U.S. 63, 70, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977)

reads, in pertinent part, as follows:

> This is not to say that every set of allegations not on its
> face without merit entitles a habeas corpus petitioner to
> an evidentiary hearing. As in civil cases generally, there
> exists a procedure whose purpose is to test whether facially
> adequate allegations have a sufficient basis in fact to warrant
> plenary presentation of evidence. That procedure is, of course,
> the motion for summary judgment. Upon remand, the warden
> will be free to make such a motion, supporting it with whatever
> proof he wishes to attach. If he chooses to do so, Allison will
> then be required either to produce some contrary proof indicating
> that there is a genuine issue of fact to be resolved by the district court
> or to explain his inability to produce such proof. Fed. Rules Civ.
> Proc. 56(e)(f).
>
> Moreover, as is now expressly provided in the Rules Governing
> Habeas Corpus Cases, the district court judge...may employ a variety
> of measures in an effort to avoid the need for an evidentiary
> hearing. Under Rule 6, a party may request that discovery
> take place, and "there may be instances in which discovery
> would be appropriate...Under Rule 7, the judge can direct expansion
> of the record to include any appropriate materials that "enable
> the judge to dispose of some habeas petitions not dismissed
> on the pleadings without the time and expense required for
> an evidentiary hearing."
>
> In short, it may turn out upon remand that a full evidentiary
> hearing is not required. **But Allison is "entitled to careful
> consideration and plenary processing of his claim, including
> full opportunity for presentation of the relevant facts."**
> *Harris vs. Nelson*, 394 U.S. at 298, 89 S.Ct. at 1090
> *Blackledge vs. Allison*, at 431 U.S. 80-81, 97 S.Ct. 1632-1633.

The standards for granting a motion to dismiss and a motion for summary

judgment are the same. *Celotex Corp. vs. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). The district court judge must consider all the allegations in the 2255 motion

as true, unless conclusively refuted by the record. *Anderson vs. Liberty Lobby, Inc.,* 477 U.S.

242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)["Credibility determinations are not the function of the judge; rather, the evidence of the non-movant is to be believed, and all justifiable inferences drawn in his favor." *Anderson,* 477 U.S. at 255].

The standards applied to the evaluation of a 2255 motion are no different than the standards applied to any other species of motion for summary judgment.

*Aron vs. United States*, 291 F3d 708, 714 (11th Cir. 2002) states:

> As we have previously stated, if the petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim."
>
> The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only allege--not prove--reasonably specific, non-conclusory facts that, if true would entitle him to relief. If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous, the district court is required to hold an evidentiary hearing. It is in such a hearing that the petitioner must offer proof.

In this case, the district court abused its discretion when it dismissed the 2255 motion without discovery and without an evidentiary hearing. As such, the facts set forth in the 2255 motion must be accepted as true unless conclusively refuted by the record. All reasonable inferences must be accepted as true. The movant's allegations must regarded as credible and accepted as fact. *Conaway vs. Polk*, 453 F3d 567, 582 (4th Cir. 2006). See also: *Anderson vs. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)["Credibility determinations are not the function of the judge; rather, the evidence of the non-movant is to be believed, and all justifiable inferences drawn in his favor." *Anderson,* 477 U.S. at 255].

Keeping summary judgment standards in mind, the Court should have accepted all facts set forth in the pro-se 2255 Motion and the Supplemental Motion as true.  The Court's failure to

do so is contrary to **Blackledge, Celotex, Conaway, Anderson, Aron, supra.**  As reasonable

jurists could differ; a court could resolve the issue in a different manner and the question is

adequate and deserves to proceed further, Mr. Baxter is entitled to the issuance of a COA on his

claims of procedural error.

## II. THE CONSTITUTIONAL ISSUES

### A. GROUND ONE: THE CONVICTION WAS OBTAINED AND SENTENCE IMPOSED IN VIOLATION OF THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT ALL CRITICAL STAGES

### 1. LEGAL PRINCIPLES APPLICABLE TO CLAIMS OF INEFFECTIVE ASSISTANCE BASED ON INADEQUATE LEGAL ASSISTANCE

**Strickland vs. Washington**, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674

(1984) established a two-pronged-test for evaluating claims of ineffective assistance based on

inadequate legal assistance.

First, the moving party in a 2255 motion must plead and eventually prove that his

attorney made one or more errors. **Kimmelman vs. Morrison**, 477 U.S. 365, 384, 106 S.Ct. 2574,

91 L.Ed.2d 305 (1986) states, "a single serious error may support a claim of ineffective

assistance of counsel." The Court added that "this single serious error" could cause counsel's

performance to fall "below the level of reasonable professional assistance" even where "counsel's

performance at trial was generally creditable enough," and even where counsel made "vigorous

cross-examination, attempts to discredit witnesses, and an effort to establish a different version

of the facts." Id. 477 U.S. at 386. **Murray vs. Carrier**, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d

397 (1986).

**Strickland** recognized that an attorney's duty to provide reasonably effective assistance

includes "the duty to make reasonable investigations or make a reasonable decision that makes

particular investigations unnecessary." **Strickland,** 466 U.S. at 691, 104 S.Ct. at 2052;  see also

ABA Standards for Criminal Justice: Prosecution Function and the Defense Function 4-4.1(a)

(3d Edition 1993)("Defense counsel should conduct a prompt investigation of the circumstances

of the case and explore all avenues leading to facts relevant to the merits of the case…").

Strategic choices made after a thorough investigation of the facts are entitled to a presumption of

validity. Strategic decisions after a less than complete investigation are reasonable precisely to

the extent that reasonable professional judgments support the limits of the investigation. Failure

to conduct any pretrial investigation is objectively unreasonable. ***Rolan v. Vaughn***, 445 F3d 671,

682 (3d Cir. 2006).

An attorney's decision not to pursue a specific course of action is not entitled to

deference as "strategic" unless it is a choice made after "a reasonable investigation of the factual

scenario."   A decision by counsel not to present a specific defense is not entitled to deference

where the decision is uninformed. ***Rolan v. Vaughn,*** 445 F3d 671, (3d Cir. 2006).

> ***Strickland*** and it progeny make clear that counsel's strategic choices
> will not be second-guessed by *post-hoc* determinations that a different
> trial strategy would have fared better. 466 U.S. at 689.  However, there is
> a prerequisite to this rule's application.  Only choices made after a  reasonable
> investigation of the factual scenario are entitled to a presumption of validity.Id.,
> at 690-91. …Failure to conduct any pretrial investigation is objectively
> unreasonable. e.g. ***United States v. Gray***, 878 F2d 702, 711 (3d Cir. 1898).
> The district court noted that Goldstein never attempted to contact either Vargas
> or Aponte after Rolan gave Goldstein their names. Goldstein did turn their
> names over to the prosecution as potential *alibi* witnesses, as required by
> Pennsylvania law, but after the prosecution told Goldstein that they were not alibi
> witnesses,  Goldstein made no attempt to determine whether they might have
> other information potentially valuable to the defense.  Although the decision to
> forgo a self-defense claim is of the type that may be entitled to a presumption of
> validity, Goldstein's decision not to present the defense cannot be accorded the
> normal deference to strategic choices because it was uninformed.  See United
> States v. Kauffman, 109 F3d 186, 190 (3d Cir. 1997).  Thus, we conclude that
> Goldstein's representation of Rolan fell below the objective
> standard of reasonableness. ***Rolan*** at 681-682.

In *United States v. Gray,* 878 F2d 702 (3d Cir. 1989), defense counsel had the names of at least four witnesses who had observed the criminal incident, but made no effort to contact any of the known witnesses.  Counsel did not hire an investigator and offered no strategic justification for his failure to investigate the case.  The court in *Gray* found that "counsel's behavior was not colorably based on tactical considerations but merely upon a lack of diligence…" *Gray* at 712.

*Gray* also notes that the defendant's burden under the second prong of *Strickland* is to "establish a reasonable probability – one sufficient to undermine our confidence in the outcome—that the jury's verdict would have been different if not for counsel's errors.  See *Strickland* , 466 U.S. at 695.  *Gray* at 712.  In determining whether a defendant suffered prejudice, "the effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Gray* at 710-711, quoting *Strickland* , 466 U.S. at 696.

The right to effective assistance of counsel includes the right to have the lawyer adequately investigate the facts and prepare the case for plea or for trial. *Powell vs. Alabama*, 287 U.S. 45, 57-58, 53 S.Ct. 55, 77 L.Ed. 158 (1932)[presuming prejudice where there was "no attempt made to investigate" noting that "consultation, thoroughgoing investigation and preparation are vitally important" in providing effective representation].

Second, the moving party must plead and eventually prove that the error or errors prejudiced some aspect of the case**.**  Prejudice is a "reasonable probability" which is defined as a probability sufficient to undermine confidence in the outcome. A reasonable probability is a standard **less demanding standard** than "more likely than not." *Strickland*, 466 U.S. at 693-94,

104 S.Ct. at 2052, *Mask vs. McGinnis*, 233 F3d 132, 139 (2d Cir. 2000), *Thomas vs. Varner*, 428 F3d 491 (3d Cir. 2005). The petitioner does not have to show that counsel's deficient performance more likely than not affected the outcome of the case. Instead, the petitioner must show only a "reasonable probability" of a different outcome.

*Williams v. Taylor*, 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) reads, in pertinent part, as follows:

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different", "opposite in character or nature," and "mutually opposed to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a "reasonable probability that…the result of the proceeding would have been different.

*Julian v. Bartley*, 495 F3d 487, 498 (7th Cir. 2007)["To meet the second prong of Strickland--prejudice--the defendant must show there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. "A defendant need not show that counsel's deficient performance more likely than not altered the outcome in the case." *Id* at 693.] The chances of prejudice need be only better than negligible. *Canaan v. McBride*, 395 F3d 376, 386 (7th Cir. 2005)

*Strickland vs. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) states that a claim of ineffective assistance of counsel requires the reviewing court to consider the **"totality of the evidence"** before the judge or the jury. "Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inference to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an

isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been affected but for the errors."

With respect to appellate litigation, the United States Supreme Court has recognized that appellate practice is governed by a set of rules and requires a set of skills unfamiliar to most lay people. *Evitts v. Lucy*, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821, 830 (1985). A criminal appellant requires, and is constitutionally entitled to "careful advocacy to ensure that rights are not foregone and that substantial legal and factual arguments are not inadvertently passed over." *Penson v. Ohio*, 488 U.S. 75, 85, 109 S.Ct. 346, 352, 102 L.Ed.2d 300, 311 (1988). Appellate counsel is presumed effective and it is the movant's obligation to show otherwise. The movant can meet this burden by making a comparison between the issues raised and the issues not raised. If the issue or issues not raised are clearly stronger than the issues raised, then appellate counsel is constitutionally ineffective. *Sanders vs. Cotton*, 398 F3d 572, 585 (7th Cir. 2005), *Ramchair v. Conway*, 601 F3d 66, 77 (2d Cir. 2010).

**2. TRIAL COUNSEL FAILED TO CONDUCT A REASONABLY ADEQUATE PRETRIAL INVESTIGATION AND CALL WITNESSES NECESSARY TO REFUTE THE GOVERNMENT'S ALLEGATIONS AGAINST BAXTER**

**(a). Trial counsel failed to investigate and obtain medical records of the government's most important witness, Barbara Bullock, and failed to call a medical expert to explain the probable effects of Ms. Bullock's mental illness on her ability or willingness to give truthful testimony.**

Barbara Bullock pled guilty in October, 2003 and was sentenced on January 30, 2004. Ms. Bullock was the only conspirator to make the claim that Baxter was a participant in a scheme to defraud the WTU. Bullock testified in exchange for leniency.

At Bullock's initial sentencing, Ms. Bullock attributed her behavior to bipolar disorder. At trial, Bullock's inconsistent and contradictory testimony, mood changes and behavior raised questions about her physical, emotional, and psychological fitness and her ability and willingness to give truthful testimony.

Trial counsel should have conducted a reasonably thorough investigation into Ms. Bullock's bipolar disorder, obtained her medical records including medications prescribed to control the disorder. Trial counsel could have used the records and an expert witness to impeach and attack Ms. Bullock's ability and willingness to tell the truth.

If trial counsel had conducted a reasonably adequate pretrial investigation, there was a reasonable probability of a different outcome because Ms. Bullock's testimony was a crucial part of the government's case against Mr. Baxter. *Tucker v. Prelesnick*, 181 F3d 747, 756 (6th Cir. 1999)[found that an attorney's failure to obtain medical records casting serious doubt on the reliability of the prosecution's sole witness and failure to use contradictory statements of the witnesses was so serious as to deprive the defendant of a fair trial worthy of confidence], *Bell v. Miller*, 500 F3d 149, 156-157 (2d Cir. 2007)[attorney ineffective for failing to obtain medical records that could have been used to impeach prosecution witness.].

In *Gonzalez v. Wong,* 667 F3d 965, 977 (9th Cir. 2011), the Court said when evaluating a claim of ineffective assistance of counsel for failure to obtain the medical records of a government witness, the test of whether the medical evidence the attorney failed to discover was

prejudicial or "material" is the same as evaluating the materiality of the evidence under a ***Brady*** claim.

As set forth in detail in Mr. Baxter's claim that the government violated his right to due process guaranteed by the Fifth Amendment when it suppressed the evidence of Ms. Bullock's mental illness, the evidence was "material" because for more than forty years, federal courts have permitted the impeachment of government witnesses based on their mental condition at the time of the events testified to. ***U.S. v. Butt,*** 955 F2d 77, 82-9-83 (1st Cir. 1992. Counsel was ineffective in not conducting a reasonable investigation and obtaining the evidence.

The failure to investigate relevant medical evidence that could have been used to impeach the government's main witness states a claim of ineffective assistance of counsel.  In ***U.S. v. Weaver,*** 234 F3d 42 (D.C. Cir. 2000), this circuit said that an evidentiary hearing on a claim of ineffective assistance of counsel for failing to obtain information about three suicide attempts by a government witness could be required if the witness was "a key government witness" [as was Bullock].  The Court also suggested that in that instance, a hearing might also be required on when the information about the suicide attempts became available to the government and the defense.  The facts of Mr. Baxter's case support the requirement for an evidentiary hearing.

The Court erred in denying the claim of ineffective assistance of counsel for failure to conduct a reasonable pre-trial investigation without first holding an evidentiary hearing. Reasonable jurists could differ as to whether all convictions should be vacated; a court could resolve the issue in a different manner and the question is adequate and deserves to proceed further.  See ***Strickland, Gray, Machibroda, Tucker, Gonzalez, Butt*** and ***Weaver..***  As reasonable jurists could differ, Mr. Baxter is entitled to a Certificate of Appealability on this issue.

### 2. Ineffective assistance of counsel at sentencing

A COA should be granted as to the claims of ineffective assistance of sentencing counsel raised in the pro-se 2255 Motion.

***Kimmelman vs. Morrison***, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)[1] states, "a single serious error may support a claim of ineffective assistance of counsel." The Court added that "this single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance" even where "counsel's performance at trial was generally creditable enough," and even where counsel made "vigorous cross-examination, attempts to discredit witnesses, and an effort to establish a different version of the facts." Id. 477 U.S. at 386. ***Murray vs. Carrier***, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). ***Wiggins v. Smith***, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) states that the next step is to identify the non-egregious errors, aggregate them and then determine whether the cumulative effect violated the right to effective assistance. ***Floyd vs. Hanks***, 364 F3d 847, 850 (7th Cir. 2004)[Attorney errors are considered both individually and collectively for prejudice], ***Sanders vs. Ryder***, 342 F3d 991, 1000 (9th Cir. 2003), ***Cargle vs. Mullin***, 317 F3d 1196, 1212 (10th Cir. 2003).

The decision to deny the claim of ineffective assistance of appellate counsel without first holding an evidentiary hearing is contrary to ***Strickland, supra.*** and contrary to ***Evitts v. Lucy***, **supra** and ***Penson v. Ohio***, **supra.** Looking at ***Machibroda, supra,*** where the claims in a 2255 motion cannot be decided on the record and are not clearly refuted by the files and records, an evidentiary hearing is required. Reasonable jurists could differ as to whether sentencing counsel was ineffective; whether it was proper to decide the claims of ineffective assistance of sentencing

---

[1] ***Kimmelman*** applied ***Strickland*** to a trial.

counsel without holding an evidentiary hearing and whether the Court properly aggregated the cumulative errors of counsel before denying the 2255 Motion.

As reasonable jurists could differ; a court could resolve the issue in a different manner and the question is adequate and deserves to proceed further, Mr. Baxter is entitled to the issuance of a Certificate of Appealability on his claims of ineffective assistance of sentencing counsel.

## 3. Ineffective assistance of appellate counsel

A COA should be granted as to the claims of ineffective assistance of appellate counsel raised in the pro-se 2255 motion.

Appellate counsel is presumed effective and it is the movant's obligation to show otherwise. The movant can meet this burden by making a comparison between the issues raised and the issues not raised. If the issue or issues not raised are clearly stronger than the issues raised, then appellate counsel is constitutionally ineffective. *Sanders vs. Cotton*, 398 F3d 572, 585 (7th Cir. 2005), *Ramchair v. Conway***,** 601 F3d 66, 77 (2d Cir. 2010).

*Kimmelman vs. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)[2] states, "a single serious error may support a claim of ineffective assistance of counsel." The Court added that "this single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance" even where "counsel's performance at trial was generally creditable enough," and even where counsel made "vigorous cross-examination, attempts to discredit witnesses, and an effort to establish a different version of the facts." Id. 477 U.S. at 386. *Murray vs. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) states that the next step is to

---

[2] *Kimmelman* applied *Strickland* to a trial.

identify the non-egregious errors, aggregate them and then determine whether the cumulative effect violated the right to effective assistance. ***Floyd vs. Hanks***, 364 F3d 847, 850 (7th Cir. 2004)[Attorney errors are considered both individually and collectively for prejudice], ***Sanders vs. Ryder***, 342 F3d 991, 1000 (9th Cir. 2003), ***Cargle vs. Mullin***, 317 F3d 1196, 1212 (10th Cir. 2003).

The decision to deny the claim of ineffective assistance of appellate counsel without first holding an evidentiary hearing is contrary to ***Strickland, supra.*** and contrary to ***Evitts v. Lucy***, **supra** and ***Penson v. Ohio***, **supra.**  Looking at ***Machibroda, supra,*** where the claims in a 2255 motion cannot be decided on the record and are not clearly refuted by the files and records, an evidentiary hearing is required.  Reasonable jurists could differ as to whether appellate counsel was ineffective; whether it was proper to decide the claims of ineffective assistance of appellate counsel without holding an evidentiary hearing and whether the Court properly aggregated the cumulative errors of counsel and conducted a probing inquiry for prejudice before denying the 2255 Motion. ***Sears v. Upton***, 130 S.Ct. 3259, 177 L.Ed.2d 1025, 1033 (6/29/10)[requires a probing inquiry for prejudice]

Reasonable jurists could differ as to whether all convictions should be vacated; a court could resolve the issue in a different manner and the question is adequate and deserves to proceed further.

Mr. Baxter is entitled to the issuance of a COA on his claims of ineffective assistance of appellate counsel.

**IV. THE CONVICTION WAS OBTAINED AND SENTENCE IMPOSED IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES**

**A. ACTUAL, FACTUAL INNOCENCE OF HONEST SERVICES FRAUD BASED ON AN INTERVENING CHANGE IN THE LAW**

*Skilling v. United States*, 130 S.Ct. 2896, 177 L.Ed.2d 619, 2010 U.S. Lexis 5269

(6/24/10) decriminalized honest services fraud not involving involved bribery or kickbacks.

*Skilling*, the former chief executive officer at Enron Corporation, was convicted of participating

in a scheme to deceive investors about Enron's true financial performance by manipulating

publicly reported financial results and making false and misleading statements. Count One of the

indictment charged Skilling with honest services wire fraud in violation of 18 U.S.C. 371, 1343

and 1346 by depriving Enron and its shareholders of the intangible right to his honest services.

The Supreme Court reversed the conviction for honest services wire fraud. The Supreme Court

held that 18 U.S.C. 1346 criminalizes only fraudulent schemes involving bribery and kickbacks.

*Skilling* is retroactive to collateral review because it decriminalized conduct formerly considered

criminal.[3]

   *Bousley v. United States*, 523 U.S. 614, 620, 118 S.Ct. 1601, 140 L.Ed.2d 828

(1998)[Change in the law rendering a person actually innocent is retroactive to 2255 motion].

   *Stocker* vs. *Warden*, 2004 U.S. Dist. Lexis 5395 [EDPA, Giles, C.J.][Serial habeas

corpus granted based on change in the law which rendered Stocker actually innocent of a

violation of Pennsylvania Corrupt Organizations Act].

   In the present case, the conviction on the conspiracy charged in Count One must be

vacated because it alleges multiple object offenses including as an object the deprivation of the

right to honest services theory rendered invalid by *Skilling*, and there is no basis to conclude that

the convictions were not based on the invalid theory of liability.

_____

[3] See *United States v. Leslie*, 2010 U.S. Dist. Lexis 81800 (MDLA 2010)[Indictment based on deprivation of right to honest services dismissed because Leslie's alleged activities did not involve bribery or kickbacks], *United States v. McGeehan*, 625 F3d 159 (3d Cir. 2010)[for honest services fraud vacated].

***United States vs. Syme***, 276 F3d 131, 144 (3d Cir. 2002) states:

> As we noted above, the prosecution has presented
> alternative theories of guilt to support each count of
> the indictment. Each count rests on two or more of
> the four main theories that the government presented...
> When a criminal defendant appeals a conviction in which
> the prosecution presented more than one theory of guilt and
> the jury returned a general verdict, we apply the holding of
> *Griffin vs. United States*, 502 U.S. 46, 112 S.Ct. 466,
> 116 L.Ed.2d 371 (1991). *Griffin* restated the longstanding rule
> that if the evidence is insufficient to support a conviction
> on one alternative theory that was charged to the jury in the
> same count, then a reviewing court should assume that the
> jury convicted on the factually sufficient theory and should
> let the verdict stand ...However, under *Griffin*, if one of two
> or more alternative theories supporting a count of conviction
> is either (1) unconstitutional, or (2) legally invalid,
> then the reviewing court should vacate the jury verdict
> and remand for a new trial without the invalid or
> unconstitutional theory. Id at 56, 112 S.Ct. 466 (citing
> *Stromberg vs. California*, 283 U.S. 359, 367-368, 51 S.Ct.
> 532, 75 L.Ed. 1117 (1931)(reversing a conviction where
> one of the alternative theories of guilt was unconstitutional)
> and *Yates vs. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064,
> 1 L.Ed.2d 1356 (1957)(reversing a conviction where one of the
> possible grounds was legally invalid because it was time- barred).

Although errors in jury instructions no longer automatically require that a conviction be vacated, it remains true that the convictions must be vacated if there is a real risk that the conviction was based on the invalid honest services theory.

As the ***Skilling*** Court explained, where a jury returns a general verdict that may rest on a legally invalid theory, the conviction may be upheld under a harmless-error analysis. 130 S. Ct. at 2934. Harmless error review means that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). ***Skilling*** cited

***Hedgpeth v. Pulido***, 555 U.S. 57, 129 S. Ct. 530, 531, 172 L. Ed. 2d 388 (2008), where the Court instructed that "a reviewing court finding such error should ask whether the flaw in the

instructions 'had substantial and injurious effect or influence in determining the jury's verdict.'"

*Hedgpeth*, 555 U.S. 57, 129 S. Ct. 530, 531, 172 L. Ed. 2d 388 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)), cited in *Skilling*, 130 S. Ct. at 2934 n.46. That standard, the Court made clear, applies on direct review of a conviction as well as on collateral review. *Id.* at 2934 n.46.,

Turning to the present case, it is clear that Baxter's conviction on Count One was based on the invalid honest services theory, because the government spent most of its time attempting to prove that Baxter failed to satisfy his fiduciary obligation to report embezzlement by the WTU's President, but spent relatively little time and effort attempting to prove liability on other theories, such as that Baxter himself accepted salary, pension and benefits to which he was not entitled. The honest services theory of liability was the dominant theory and the honest services instruction had a substantial and injurious effect.

Assuming the Court vacates the conviction and sentence on Count One, then the convictions and sentences on the rest of the counts must be vacated because the government requested, and the district court gave a *Pinkerton* instruction authorizing the jury to convict the Petitioner of all acts committed by alleged co-conspirators during the course of the alleged conspiracy to commit honest services mail and wire fraud. [Tr. 7065-67]. The jury is presumed to follow the instructions. Here, the instructions authorized convictions for counts charging substantive offenses even if the jury found that *Petitioner* did not participate in the acts charged in the counts.[4]

---

[4] Tellingly**,** the prosecution relied on the Pinkerton theory in its closing argument. [Tr. 6705-06]. The judge gave a Pinkerton instruction. Finally, *United States v. Hemphill,* 514 F3d 1350, 1362-1365 (DC Cir. 2008) indicates that the substantive offenses committed by other members of the alleged conspiracy were attributed to Baxter under the *Pinkerton* theory.

*United States v. Howard*, 517 F3d 731, 736 (5th Cir. 2008) states, "The decision in this case turns on the application of *Yates*, which holds that a conviction must be vacated if a legally invalid theory was submitted to the jury and it is impossible to tell whether the jury's verdict of guilt relied on the invalid theory."

In *Howard*, supra at 517 F3d 731 (5th Cir. 2008), the district court reversed all convictions under circumstances similar to the case at bar. The district court reversed a conviction for conspiracy to commit honest services mail fraud and then reversed convictions for all counts that could have been the consequence of the *Pinkerton* charge because it was not possible to say whether the convictions on the substantive counts were based on the actions of the co-conspirators attributed to Howard under the *Pinkerton* theory.

Turning back to the case at bar, Mr. Baxter was charged with engaging in a scheme to defraud the WTU under an assortment of theories including the theory of deprivation of the right to honest services.

The *Skilling* decision decriminalized all honest services mail fraud, wire fraud, and other kinds of fraud unless the scheme involved bribery or kickbacks. Baxter's case did not involve bribes and kickbacks. There is very little doubt but that a properly instructed jury would have acquitted Baxter but for the honest services theory of liability. As such, Baxter is actually, factually innocent of honest services mail or wire fraud.

The convictions for fraud must be reversed because they violate the holding in *Skilling*. The convictions for making false statements are inextricably intertwined with the conviction for fraud convictions, and they must be reversed because all the counts are linked by the *Pinkerton* instruction given in connection with the conspiracy count. *United States v. Howard*, 517 F3d 731 (5th Cir. 2008).

In the present case, the charging and instructional errors had a substantial and injurious effect. The charges against Baxter appear to stem from the failure of Baxter to fulfill fiduciary responsibilities to the WTU by reporting Bullock's fraudulent conduct to the authorities and otherwise taking appropriate steps to protect the WTU from exploitation by the Union President. The charges do not appear to stem from Baxter himself embezzling from the WTU.

More likely than not the convictions were based on the actions of co-conspirators as opposed to the actions of Baxter because there was no evidence that the salary and pension payments received by Baxter were illegal or improper. Tellingly, at sentencing, the judge had the opportunity to make a ruling that payments to Baxter were fraudulent, but he declined.

The cornerstone of the Government's case against Baxter was that he failed to act with the care and diligence one would expect of the Treasurer of the WTU, and that he failed to report the acts and omissions of Bullock. The core of the Government's case against Baxter was honest services fraud. *Skilling* rendered this theory of liability non-criminal.

A COA should be granted on this issue. Reasonable jurists could differ as to whether all convictions should be vacated; a court could resolve the issue in a different manner and the question is adequate and deserves to proceed further. The Court's decision to deny relief under *Skilling* and to vacate all convictions is contrary to ***Skilling, Bousley, Stocker, Syme, Hedgpeth, Brecht, Howard*** and ***Yates.***

## B. ACTUAL, FACTUAL INNOCENCE OF MONEY LAUNDERING BASED ON AN INTERVENING CLARIFICATION OF THE LAW

Petitioner's appeal was argued November 15, 2007. The appeal was decided February 8, 2008.

While Petitioner's appeal was pending, the Court of Appeals decided ***United States v. Adefehinti***, 510 F3d 319, 324 (DC Cir. 12/18/07) which states:

To convict a person for money laundering under 18 U.S.C. 1956(a)(1)(B)(i), the government must prove that (1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of unlawful activity; (3) the defendant knew the proceeds were from unlawful activity; and (4) the defendant knew that the transaction was designed in whole or in part--(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity

*Adefehinti* states that the "transaction or transactions that created the criminally derived proceeds must be distinct from the money laundering transaction."

Under *Adefehinti*, the Petitioner is actually innocent of money laundering because no matter how the facts are twisted, the transactions that created the criminally derived proceeds were not separate and distinct from the  money laundering transactions.

It was for this reason that the district court, at sentencing, correctly stated that the alleged "money laundering" in Baxter's case was not sophisticated, sufficiently detailed or complex to warrant the two level increase.

Mr. Baxter presents a claim of actual innocence of the money laundering charges. In *Lopez v. Trani*, 628 F3d 1228, 1230 (10th Cir. 2010), the Court held that a sufficiently supported claim of actual innocence creates an exception to all procedural barriers for bringing constitutional claims including the time barriers erected by the AEDPA. The Court held that the petitioner does not have to show that he diligently pursued the claim. The Court stated:  "Thus, 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'" *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

The Court's decision not to vacate the conviction and sentences for money laundering is contrary to ***Adefehinti*** , ***Lopez, Murray v. Carrier***. Reasonable jurists could differ as to whether all convictions should be vacated; a court could resolve the issue in a different manner and the question is adequate and deserves to proceed further.

## C.  A COA SHOULD ISSUE ON MR. BAXTER'S CLAIM THAT THE GOVERNMENT'S SUPPRESSION OF BRADY MATERIAL VIOLATED HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS

***Banks vs. Dretke***, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) reads, in pertinent part, as follows:

> *Brady*, we reiterate, held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. 83 at 87, 10 L.Ed.2d 215, 83 S.Ct. 1194. We set out in *Strickler vs. Greene*, 527 U.S. 263, 281-82, 144 L.Ed.2d 286, 119 S.Ct. 1936 (1999) the three components or essential elements of a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281-282, 144 L.Ed.2d 286, 119 S.Ct. 1936. Corresponding to the second *Brady* requirement (evidence suppressed by the State), a petitioner shows "cause" when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third *Brady* component (prejudice), prejudice within the compass of "cause and prejudice"  requirement exists when the suppressed evidence is "material" for *Brady* purposes.  527 U.S. 263 at 282, 144 L.Ed.2d 286, 119 S.Ct. at 1936. ***Banks*** at 1272...

> "Unless suppressed evidence is material for Brady purposes, its suppression does not give rise to sufficient prejudice to overcome a procedural default." *Strickler*, 527 U.S. 263 at 282, 144 L.Ed.2d 286, 119 S.Ct. 1936. Our touchstone of materiality is *Kyles vs. Whitley*, 514 U.S. 419, 131 L.Ed.2d 490, 115 S.Ct. 1555 (1995). *Kyles* instructed that the materiality standard for *Brady* claims is met when the "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." 514 U.S. 419 at 435, 131 L.Ed.2d 490, 115 S.Ct. at 1555. See also 514 U.S. at 419, 434-435, 131 L.Ed.2d 490, 115 S.Ct. 1555 ("A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence there would have been enough left to convict."); accord, *Strickler,* 527 U.S. 263 at 290,

144 L.Ed.2d 286, 119 S.Ct. 1936. In short, Banks must show a "reasonable probability" of a different result. ***Banks*** at 1276

***Youngblood v. West Virginia***, 547 U.S. 867, 869-70, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) indicates that the ***Brady*** rule applies to the prosecution and law enforcement officials.

On January 30, 2004, at her sentencing hearing, Barbara Bullock blamed her crimes on bipolar disorder. The Government was informed of the severity of the disorder, and the need for medication to control it.

On January 23, 2007, Ms. Bullock was given a 2-1/2 year sentence reduction as an award for her testimony against Baxter.

Although the Government knew about Bullock's medical condition and the medical challenges facing her as a person afflicted with bipolar disorder, the government suppressed this information.

Bipolar disorder is material because it casts doubt on the ability and willingness of Ms. Bullock to tell the truth.

Without full disclosure, cross-examination was ineffective because trial counsel could not sensibly question Bullock regarding the effect of the disease and the medications on her ability and willingness to tell the truth.

Because Ms. Bullock was a central witness against Mr. Baxter, the failure to disclose the illness and all of the medical records regarding Ms. Bullock was a material violation of the ***Brady*** rule.

Reasonable jurists could differ as to whether the failure to disclose the illness of and the medical records of Ms. Bullock , critical witness, was a material violation of the ***Brady*** rule.  For instance, in ***Gonzalez v. Wong,*** 667 F3d 965, 983 (9th Cir. 2011), that Court said that evidence of

mental illness on the part of a government witness is favorable to the defense because it is impeaching. The *Gonzalez* court found that even inadvertent suppression by the government satisfied the suppression component of *Brady*. *Gonzalez,* 667 F3d at 982. The Court also determined that material calling the mental state and credibility of the government witness not turned over supported a *Brady* claim. Citing to *U.S. v. Butt,* 955 F2d 77, 82-83 (1st Cir. 1992), the 9th Circuit noted that the impeachment of a government witness with evidence of the witness' mental condition had long been recognized. ["For over forty years, federal courts have permitted the impeachment of a government witness based on their mental condition at the time of the event testify to."] *Butt,* 955 F2d 82-83.

Looking at *Gonzalez* and *Butt,* reasonable jurists could differ as to whether Mr. Baxter's claim that his right to due process was violated by the government's failure to disclose the mental illness of the chief witness against Mr. Baxter, as required by *Brady.* A court could resolve the issue in a different manner and the question is adequate and deserves to proceed further. Therefore, a COA should be granted under *Machibroda,* **supra**.

## V. CONCLUSION

The application for COA should be granted as to all issues raised in the 2255 Motion and Supplemental 2255 Motion.

/s/Cheryl J. Sturm
CHERYL J. STURM
Attorney-At-Law
387 Ring Road
Chadds Ford, PA 19317
Telephone Number: 484/ 771-2000
Facsimile Number: 484/771-2008
E-Mail: sturmcj@aol.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 9th day of November, 2012, the Application for

Certificate of Appealability was electronically filed and is available for viewing and

downloading from the CM/ECF system.

Sherri Lea Berthrong, Esq.
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530


/s/Cheryl J. Sturm